UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH ALLEN WCISEL,

                                  Plaintiff,

                                              CIVIL CASE NO. 04-40063

v.

THE CITY OF UTICA, et al.,                HONORABLE PAUL V. GADOLA
                                                    U.S. DISTRICT COURT
                                Defendants.
_____/


**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      This is a civil rights actions filed pursuant to 42 U.S.C. §§ 1983 and 1985(3). Plaintiff Kenneth Allen Wcisel alleges that Defendant City of Utica and four city police officers violated his civil rights during his arrest on the evening of December 9, 2002. Before the Court is Defendants' motion for summary judgment. Pursuant to Local Rule 7.1(e)(2) the Court has determined that a hearing is unnecessary and will decide the matter on the parties submissions. For the reasons that follow, the Court will grant Defendants' motion.

**I.    Background**

      On December 9, 2002, at approximately 10:41 p.m., Defendant Utica City Police Officer Gregory Morabito observed Plaintiff's vehicle cross over the center lane while making a wide turn. After further observing that Plaintiff's brake lights did not function when he stopped at a stop sign, Morabito affected a traffic stop. In response to questioning, Plaintiff admitted to having just left a bar where he had consumed a couple of beers within a few hours. A check of Plaintiff's records revealed an outstanding warrant for resisting and obstructing a police officer. Morabito informed

Plaintiff of the outstanding warrant. Morabito observed signs of intoxication and asked Plaintiff to exit his vehicle to perform a field sobriety test. At this point, the parties' accounts diverge.

According to Plaintiff, the driver's side door of his vehicle was broken, requiring him to roll the window up before he could open the door. When he did not exit as fast as Morabito and his partner, Officer David Fazekas, wanted, the officers became incensed. Morabito yelled at Plaintiff through the driver's side window to exit the vehicle while Fazekas went around to the passenger side, opened the door, and pointed his gun a Plaintiff's head. With Morabito screaming at him to exit the vehicle and Fazekas instructing him to freeze, Plaintiff put his hands in the air and attempted to explain the problem with his door. Unwilling to listen, the officers pushed Plaintiff out of his vehicle and onto the ground where he was punched, kicked, and maced by Morabito and Fazekas, as well as by other officers who had just arrived. Plaintiff was then taken to the police station where he was hosed down with cold water, ridiculed, and called a racial slur.

Defendants claim that Plaintiff was asked to step out of his vehicle, but refused. He rolled up the window, locked the door, and ignored Marobita's commands. Morabita told Plaintiff he was under arrest. Fazekas opened the passenger side door before Plaintiff could lock it and ordered Plaintiff to exit the vehicle. Because Plaintiff had one hand on a cell phone and the other tucked into his jacket, Fazekas ordered him to place both of his hands on the steering wheel. Plaintiff refused to comply. Morabito entered the vehicle, removed the keys, unlocked the driver's side door and pushed Plaintiff through the door as Fazekas pulled him out. Once out, Plaintiff began physically resisting the officers. Plaintiff ignored Fazekas's commands and grappled with him. Morabito attempted to subdue Plaintiff with OC spray unsuccessfully. He then attempted to subdue Plaintiff

by striking his legs with a baton, which was also unsuccessful. The officers were ultimately able to subdue Plaintiff, but only through the assistance of Officers Randy Plante and Jerome Carroll. Plante assisted Carroll in handcuffing Plaintiff by applying pressure to a point on Plaintiff's jaw, known as the mandibular angle pressure point.

Plaintiff was transported to the police station and then to the hospital where he was treated for the effects of the OC spray. Plaintiff alleges that, as a result of the altercation, he has suffered permanent injury to his jaw and a fractured nose. While at the hospital, Plaintiff was diagnosed with contusions and abrasions on the back of his thighs but none on his face or head. The officers were not left unscathed. Morabito was overcome by the effects of the OC spray and fractured his right wrist. Fazekas fractured bones in his right thumb, tore his pants, and broke his flashlight.

An analysis of a sample of Plaintiff's blood taken after the altercation while Plaintiff was at the hospital showed a blood alcohol content of .05 grams per 100 milliliters of blood. Plaintiff was charged in Macomb County Circuit Court with two counts of police officer assault, resisting and obstructing, with causing injury, two counts of the same without causing injury and one count of operating while intoxicated. Plaintiff plead guilty to two of the four police officer assault charges in exchange for a plea deal. At the plea hearing, Plaintiff admitted, under oath, that he resisted the officers by not exiting his vehicle in a timely manner, by not dropping his mobile phone, and by not allowing his hands to be visible at all times.

**II.     Legal Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Martin v. Ohio Turnpike Comm'n*, 968 F.2d 606, 608 (6th Cir. 1992); *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984); *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990) (Gadola, J.), *aff'd*, 929 F.2d 701 (6th Cir. 1991).

### III.   Analysis

#### A.   § 1983 Claim

##### 1.   Defendant Police Officers

Plaintiff has not sued the defendant police officers in their individual capacities. "[A]bsent any indication that these defendants are being sued individually, [the Court] must assume that they are being sued in their official capacities." *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Sixth Circuit requires that:

> the face of a complaint must indicate whether a plaintiff seeks to recover damages from defendants directly, or to hold the state responsible for the conduct of its employees. Although modern pleading is less rigid than in an earlier day, we have not let down all pleading barriers. It is not too much to ask that if a person or entity is to be subject to suit, the person or entity should be properly named and clearly notified of the potential for payment of damages individually.

*Wells v. Brown*, 891 F.2d 591, 593 (6th Cir. 1989) (citations omitted).  Plaintiff's complaint states nowhere that he is suing the defendant officers in their individual capacities.  Therefore, since "[a]n official capacity claim filed against a public employee is equivalent to a lawsuit directed against the public entity which that agent represents," Plaintiff's § 1983 claim must be analyzed as if it were only against the City of Utica.  *Claybrook v. Birchwell*, 199 F.3d 350, 356 (6th Cir. 2000).  *See Hawks v. Jones*, 105 F. Supp. 2d 718, 723 (E.D. Mich. 2000) (holding that because the plaintiff failed to sue the defendant police officers in their individual capacities, the "[p]laintiff's Section 1983 claims . . . must be evaluated under the standards applicable to the public entity they represent . . . .").

Plaintiff argues that his complaint indicates that the defendant police officers were sued in their individual capacities because the officers were named as defendants and the factual allegations described the actions of the individual officers.  Plaintiff argues that the officers were "clearly notified of the potential for payment of damages individually" because they were personally served.  *Wells*, 891 F.2d at 593.  He further argues that the issue of notice is irrelevant because indemnification agreements usually limit the individual liability of police officers.

None of Plaintiff's arguments, however, address the legal requirements of *Wells*.  Naming the officers and alleging their actions does not distinguish between their individual and official capacities.  If anything, the actions described were carried out in the officers' official capacities and the complaint alleges that the police officers "acted within the scope of their employment." Compl. at ¶ 8. Personal service of Plaintiff's complaint cannot adequately notify the officers that they are being sued in their individual capacities because the complaint itself makes no such distinction.

Also, Plaintiff has not shown how an indemnification agreement suspends the requirements of *Wells*. Plaintiff requests that he be allowed to amend his complaint to conform to these requirements, but it is too late to do so. *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) ("A party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original complaint before introducing entirely different legal theories in an amended complaint."

### 2. Defendant City

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983. It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (citations and quotations omitted). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A municipality can be liable under § 1983 for failing to train its police force, but "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388. In any event, "a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'" *Id.* (quoting *County v. Dodson*, 454 U.S. 312, 326 (1981)).

Plaintiff has failed to plead or prove that his injury is the result of any City of Utica policy

or custom. Plaintiff alleges in his § 1985 claim (conspiracy to interfere with civil rights) that each of the defendants furthered the conspiracy by "[f]ailing to properly train the defendant officer relative to arrest, restraint, traffic stop procedures and the use of reasonable force." Compl. at ¶ 27(h). Plaintiff, though, has not pled or proven that this failure to train has amounted to a "deliberate indifference" to his rights or that it was "the 'moving force [behind] the constitutional violation.'" *City of Canton*, 489 U.S. at 388.

Plaintiff argues that the City can be held liable if it chooses a course of action tailored to a specific situation and not intended to apply to later situations. Plaintiff relies on *Pembaur v. Cincinnati*, 475 U.S. 469 (1986), in which the Supreme Court held that a municipality was liable under § 1983 for a police officer's actions while serving a capias. The Supreme Court held that "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Id.* at 480. Crucial to the decision was the fact that the officer's actions were directed by the county prosecutor who, through delegation, possessed the final authority for the county's policy for serving capiases. *Id.* at 484. The Supreme Court held that:

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.

*Id.* at 482-83 (footnote omitted). Such is not the case here. The defendant police officers do not "have authority to establish binding county policy respecting particular matters and to adjust that policy for the county in changing circumstances." *Id.* at 483.

Thus, because Plaintiff has not sued the defendant officer's in their individual capacities and

7

because he has failed to establish the liability of the City of Utica, Plaintiff's claim under 42 U.S.C. § 1983 must be dismissed.

### B.     § 1985 Claim

Plaintiff's remaining claim alleges that Defendants conspired to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1985(3).  Section 1985(3) provides a cause of action "[i]f two or more persons in any State or Territory conspire, . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  *Id.*  Plaintiff alleges that the City of Utica, along with its police officers, conspired to deprive Plaintiff of his civil rights.  This, however, is not possible:

> It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation.

*Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir. 1984) (quoting *Nelson Radio & Supply Co. v. Motorola, Inc.*, 200 F.2d 911, 914 (5th Cir. 1952)).  This is known as the "intra-corporate conspiracy doctrine" and it applies to claims under § 1985(3).  *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509-10 (6th Cir. 1991).  Because the defendant police officers were employed by the City of Utica, a municipal corporation, and were "act[ing] within the scope of their employment," Compl. at ¶ 8, they could not have conspired to deprive Plaintiff of his civil rights.  Thus, Plaintiff's claim under 42 U.S.C. § 1985(3) must also be dismissed.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants' motion for summary judgment [docket entry 17] is **GRANTED**, and this action, no. 04-40063, is **DISMISSED WITH PREJUDICE**.

SO ORDERED.

Dated:   December 20, 2005                         s/Paul V. Gadola
                                                   HONORABLE PAUL V. GADOLA
                                                   UNITED STATES DISTRICT JUDGE

---

Certificate of Service

I hereby certify that on   December 20, 2005   , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
                Adam K. Gordon; Thomas F. Myers                       , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:                 James M. Brady                 .

                                                   s/Ruth A. Brissaud
                                                   Ruth A. Brissaud, Case Manager
                                                   (810) 341-7845